IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TOTAL PETROLEUM PUERTO RICO CORP., **Plaintiff,** v. LANDMARKS MEDIA, INC., **Defendant.** | CIVIL NO. 17-1402 (JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Plaintiff Total Petroleum Puerto Rico Corp. ("TPPRC" or "Plaintiff") brought suit against Landmarks Media, Inc. ("Landmarks" or "Defendant") for federal trademark infringement and dilution, and permanent injunction under Sections 32(1), 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Docket No. 1. Plaintiff also seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Fed. R. Civ. P. 57, declaring that Plaintiff lawfully terminated the agreement with Defendant. *Id.* Lastly, Plaintiff seeks an award for collection of money due to Defendant's breach of contract under Articles 1044, 1053, 1077, and 1206 of the Puerto Rico Civil Code, 31 P.R. Laws. Ann. §§ 2994, 3018, 3052 and 3371; damages; and attorney's fees. *Id.*

Presently before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, Docket No. 17, which Plaintiff timely opposed, Docket No. 29. As relevant herein, Defendant argues that Plaintiff's Complaint does not raise a substantial federal question under the Lanham Act, which deprives this Court of subject matter jurisdiction over the case. Docket No. 17 at 6-8, 20-21. Defendant

contends that Plaintiff's Complaint, rather, is based on a breach of contract, which is an issue for the courts of the Commonwealth of Puerto Rico. *Id.*

Defendant also argues that Plaintiff's Lanham Act claims are, in any event, insufficient to state a claim upon which relief could be granted. Docket No. 17 at 8-17. In this regard, Defendant contends that the Complaint fails to sufficiently allege that Defendant engaged in any unauthorized use of the "Total" mark in commerce or in connection with its own business endeavors, thus precluding a finding that Defendant infringed or diluted the "Total" mark. *Id.*

After considering the parties' positions and the applicable law, the Court hereby GRANTS Defendant's Motion to Dismiss.

## BACKGROUND[1]

Plaintiff is a corporation organized and authorized to conduct business in Puerto Rico. Docket No. 1 at 3. Plaintiff owns a gasoline station in Puerta de Tierra, San Juan, Puerto Rico (the "Puerta de Tierra Station"), that operates under the "Total" brand or trademark.[2] *Id.* Plaintiff is an industry participant in the fuel and non-fuel products and services market, which includes the outdoor advertisement billboards market. *Id.* at 4-11. Defendant, a corporation organized and authorized to conduct business in Puerto Rico, is in the business of installing and operating outdoor advertising billboards, and contracting with clients for advertising space on its billboards. *Id.* at 3.

---

[1] For purposes of Defendant's Motion, the facts are taken from Plaintiff's Complaint, Docket No. 1, and are presumed to be true.

[2] The Complaint states that the "Total" trademark is a valid mark registered with the Unites States Patent and Trademark Office (the "USPTO"), Docket No. 1 at 4; and that Plaintiff has an exclusive license from the "Total" conglomerate to use, exploit, and protect the "Total" trademark in Puerto Rico, *id.* at 11.

Plaintiff relies on the goodwill and reputation of the "Total" trademark to attract outdoor advertising companies to execute contracts with Plaintiff for outdoor billboard leasing space in gas stations in Puerto Rico that are owned by Plaintiff and operated under the "Total" trademark. Docket No. 1 at 10. By virtue of these agreements, said advertising companies-lessees would be required to exploit their outdoor billboard advertisement businesses while further exploiting the "Total" trademark. *Id.*

On October 9, 2014, Plaintiff and Defendant entered into an agreement to lease an area of twenty-five (25) square feet in the Puerta de Tierra Station, for the installation and operation of an outdoor advertisement billboard (the "Lease"). Docket No. 1 at 11, 13. Plaintiff states that the Lease was executed in order to develop the "Total" brand in the non-fuel, outdoor billboard market. *Id.* at 11-12. Plaintiff further alleges that the right to use and be a custodian of the "Total" brand was an indispensable requirement for the installation and operation of the billboard. *Id.* at 14. To this end, and with regards to the Lease, Defendant allegedly assumed multiple rights, obligations, and restrictions concerning the "Total" brand, to wit, that: (1) Defendant "was in charge of commercially exploiting" the brand, *id.* at 22; (2) Defendant was the "custodian" of the brand, *id.* at 26; and (3) Defendant was obligated to maintain the goodwill and good name of the brand, *id.* Lastly, Plaintiff posits that Defendant, by virtue of the Lease, "availed itself of the ability to lure advertisers by offering them the opportunity to partner with the Total brand and benefit from its goodwill and reputation in the non-fuel business segment; predicated on the goodwill and reputation of the Total brand and the image of the company's service stations." *Id.* at 14.

However, Defendant purportedly breached the terms of the Lease by failing to: (1) obtain the proper permits for the billboard's installation; (2) pay rents owed; and (3) properly install the billboard. Docket No. 1 at 23. Notably, Plaintiff alleges that Defendant's failure to properly install

the billboard, apart from constituting a breach of the Lease, was perceived by consumers as an act carried out or endorsed by Plaintiff. *Id.* at 22-23. As proof of said confusion, in December 2016, some neighboring residents of the Puerta de Tierra Station sent emails to Plaintiff complaining of the partially installed outdoor billboard and requesting its removal, while threatening to boycott "Total" products and services. *Id.* at 20. The Municipality of San Juan also levied a fine against Plaintiff. *Id.* at 21. Moreover, in February 13, 2017, an administrative complaint was filed against Plaintiff. *Id.* Lastly, residents of Old San Juan posted negative comments against Plaintiff on social media and allegedly boycotted "Total" products and services. *Id.*

On January 9, 2017, Plaintiff terminated the Lease, and demanded the removal of the remaining billboard structure and payment of rents owed plus other penalties. Docket No. 1 at 23-24. Also, upon termination, Defendant "ceased to be authorized to commercially exploit the Total brand in the outdoor advertising business segment and/or conduct any acts creating the impression that their operation of the billboard is originated, associated or endorsed by TPPRC." *Id.* at 24.

Plaintiff contends that Defendant's acts constitute infringement and dilution of the "Total" trademark under 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Docket No. 1 at 24, 27-28. Plaintiff claims that Defendant's improper installation, failure to remove, and continued display of the billboard is irreparably harming the "Total" trademark, because it creates the false and misleading impression to Plaintiff's consumers—namely, advertisers and other outdoor advertising companies—that Defendant's acts are condoned, sponsored, endorsed, or authorized by Plaintiff, or are associated with the "Total" brand. *Id.* at 24-25. Thus, Plaintiff seeks to enjoin Defendant from "continuing to illegally exhibit, use or tarnish the Total brand" with an injunction from the

Court ordering Defendant to remove the billboard from the Puerta de Tierra Station. *Id.* at 28-29.

Plaintiff also seeks an award of damages and attorney's fees for Defendant's Lanham Act

violations. *Id.* at 30.

## STANDARD OF REVIEW

### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(1) is the proper vehicle for challenging a court's subject matter

jurisdiction. *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001). Pursuant to Fed. R. Civ.

P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. As

courts of limited jurisdiction, federal courts must narrowly construe jurisdictional grants. *See, e.g.,*

*Alicea–Rivera v. SIMED*, 12 F. Supp. 2d 243, 245 (D.P.R. 1998). Consequently, the party asserting

jurisdiction has the burden of demonstrating the existence of federal jurisdiction. *See Murphy v.*

*United States*, 45 F.3d 520, 522 (1st Cir. 1995); *Droz–Serrano v. Caribbean Records Inc.*, 270 F. Supp. 2d

217 (D.P.R. 2003). When considering a Rule 12(b)(1) motion, a court must credit the plaintiff's

well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. *See*

*Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010) (citing *Valentin*, 254 F.3d at 363).

If it appears to the court at any time that subject matter jurisdiction is lacking, it must

dismiss the action. Fed. R. Civ. P. 12(h)(3); *McCulloch v. Vélez*, 364 F.3d 1, 5 (1st Cir. 2004). The

Court "may consider whatever evidence has been submitted, such as depositions and exhibits."

*Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996); Fed. R. Civ. P. 10(c).

Importantly, "[t]he pleading standard for satisfying the factual predicates for proving

jurisdiction is the same as applies under Rule 12(b)(6)—that is, the plaintiffs must 'state a claim

to relief that is plausible on its face.'" *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Healey*, 844

F.3d 318, 326 (1st Cir. 2016) (quoting *Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45 n.3, 49 (1st Cir. 2011)).

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 570. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 555.

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). Thus, the plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). The First Circuit has cautioned against confounding the plausibility standard with the likelihood of success on the merits, explaining that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *see also Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible.") (internal citation omitted).

Even taking plaintiff's well-pleaded allegations as true, however, Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic

circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996); *Butler v. Deutsche Bank*

*Trust Co. Ams.*, 748 F.3d 28, 32 (1st Cir. 2014). Likewise, unadorned factual statements as to the

elements of the cause of action are insufficient. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595

(1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely

be enough at [the motion to dismiss] stage; pure speculation is not." *Id*. at 596.

## ANALYSIS

The issue before the Court concerns the scope of protections afforded by the Lanham Act

under 15 U.S.C. §§ 1114(1) and 1125(c).[3] In essence, Plaintiff's novel theory is that Defendant's

breach of the Lease through the defective and incomplete installation of an outdoor advertisement

billboard on the premises of a trademark-bearing gas station, and the continued presence and

display of said billboard after the termination of the Lease, constitutes infringement and dilution

of its trademark.

In its Motion to Dismiss, Defendant contends *inter alia* that the Complaint fails to state

that Defendant's conduct ever involved the use of the "Total" mark in commerce, or in connection

with its own advertising products or services. Docket No. 17 at 8-13. Defendant further asserts

that, since the Lanham Act claims have been insufficiently plead, Plaintiff failed to raise a

---

[3] Trademark infringement claims may be brought under 15 U.S.C. § 1114(1) for registered marks, or 15 U.S.C. § 1125(a)(1)(A) for unregistered marks. *See Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006); 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:14 (5th ed.). Courts apply the same trademark infringement standard when analyzing claims under either § 1114(1) or § 1125(a)(1)(A). MCCARTHY, at § 27:18; *see, e.g., Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental*, 832 F.3d 15, 23 (1st Cir. 2016) (applying infringement test for a Section 43(a) claim); *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008) (applying same test for a Section 32(1) claim). Here, since Plaintiff has pleaded that the "Total" trademark is registered with the USPTO, Docket No. 1 at 4, the Court shall analyze Plaintiff's trademark infringement claim under § 1114(1).

substantial federal question, which would leave this Court without jurisdiction over the case. *Id.* at 6-8, 20-21.

Plaintiff's counterargument is twofold. First, Plaintiff posits that Defendant offered to sell advertising space in the outdoor billboard located in the trademark-bearing Puerta de Tierra Station, and said actions constitute a "use in commerce" of the "Total" mark. Docket No. 29 at 37. Second, Plaintiff states that this Court has consistently held that, after the termination of a contract that allows a person to conduct business from a trademark-bearing gas station, its refusal to vacate and the continued occupation of the premises constitutes trademark infringement and dilution. *Id.* at 31.

After due consideration of the pleadings and the relevant case law, the Court finds that Plaintiff has failed to sufficiently state a claim under the Lanham Act and, thus, the Court lacks subject matter jurisdiction over this action.

## I.  The Lanham Act Claims

### A. Trademark Infringement

In order to weigh the allegations in the Complaint with regards to Defendant's alleged infringement of the "Total" mark, the Court finds it useful to review the nature, history, and purpose of trademark protection in the United States. In *Boston Duck Tours*, the First Circuit recapitulated the herein relevant points:

> Although trademarks are not explicitly authorized by the United States Constitution, our federal legal system offers statutory protection for entities that adopt and use trademarks to advertise and market their goods and services. This protection is justified by the substantial benefits that trademarks offer for both consumers and businesses. Serving to distinguish and identify goods, as well as their sources, trademarks concisely impart information to consumers, reducing their search costs and allowing them to make

> decisions that more closely coincide with their preferences. Because consumers rely heavily on trademarks when making choices, businesses also have an incentive to maintain product quality, lest they lose disappointed consumers.
>
> The considerable reliance on trademarks by consumers also creates an incentive for other competing, and typically less successful businesses, to pass off their inferior brand as the successful brand by *adopting a confusingly similar trademark,* in effect appropriating the goodwill created by the producer of the successful brand. *Trademark law is designed, in part, to prevent these "passing-off" practices* and the consumer confusion that results from it. *Trademark infringement law is specifically targeted to address this concern.*

531 F.3d 1 at 12 (emphasis added) (citations omitted). Put simply, "[t]he purpose of trademark laws is to prevent the use of the *same or similar marks* in a way that confuses the public about the actual source of the goods or service." *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.,* 89 F.3d 5, 9 (1st Cir. 1996) (emphasis added) (citations omitted). Moreover, in a typical trademark infringement case, "the defendant is using a mark to identify its goods that is similar to the plaintiff's trademark." *Interactive Prod. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 695 (6th Cir. 2003).

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), governs trademark infringement of registered marks. *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.,* 103 F.3d 196, 200 n.5 (1st Cir. 1996). Section 32(1) provides, in relevant part, that:

> Any person who shall, *without the consent* of the registrant *use in commerce* any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C § 1114(1) (emphasis added). To successfully assert claims of trademark infringement under Section 32(1), Plaintiff must sufficiently allege "(1) that its mark is entitled to trademark

protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." *Boston*

*Duck Tours*, 531 F.3d at 12.

### B. Trademark Dilution

Section 43(c) of the Lanham Act governs trademark dilution claims. 15 U.S.C. § 1125(c).

Section 43(c) provides, in relevant part, that:

> [T]he owner of a famous mark that is distinctive, inherently or
> through acquired distinctiveness, shall be entitled to an injunction
> against another person who, at any time after the owner's mark has
> become famous, commences *use of a mark or trade name in commerce* that
> is likely to cause dilution by blurring or dilution by tarnishment of
> the famous mark, regardless of the presence or absence of actual or
> likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c) (emphasis added). As the statute implies, there are two types of dilution.

Dilution by "blurring" is defined as the "association arising from the similarity between a mark or

trade name and a famous mark that impairs the distinctiveness of the famous mark." *Id.* §

1125(c)(2)(B). Dilution by "tarnishment" is defined as the "association arising from the similarity

between a mark or trade name and a famous mark that harms the reputation of the famous mark."

*Id.* § 1125(c)(2)(C). Importantly, Section 43(c) states that any noncommercial use of a mark "shall

not be actionable as dilution by blurring or dilution by tarnishment." *Id.* § 1125(c)(3)(C).

Anti-dilution statutes, such as Section 43(c), "protect only the trademark or trade dress

owner and are not concerned with possible confusion on the part of consumers." *I.P. Lund Trading*

*ApS v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998). "Anti-dilution statutes have developed to fill a void

left by the failure of trademark infringement law to curb the unauthorized use of marks where

there is no likelihood of confusion between the original use and the infringing use." *Id.* (quoting

*L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 30 (1st Cir. 1987)). The archetypal problems that

Section 43(c) was meant to solve "involved non-competing products as to which there could, by definition, be no confusion and a world-famous brand name which was either tarnished or blurred by its application to a different product which was obviously trading on the good will of that name." *Id.* at 45; *see also L.L. Bean*, 811 F.2d at 31 ("[D]ilution injury stems from an unauthorized effort to market incompatible products or services by trading on another's trademark.").[4]

Thus, to state a trademark dilution claim, Plaintiff must show *inter alia* that Defendant has used a mark in commerce that is diluting Plaintiff's famous mark, and that the similarity between Defendant's mark and the famous mark gives rise to an association between them. *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007).

C. **Prerequisites for Trademark Infringement and Trademark Dilution Claims**

For all of Plaintiff's theories of recovery under the Lanham Act, determining whether Plaintiff has sufficiently alleged Defendant's use in commerce of the "Total" mark is a threshold question for the Court. *See I.P. Lund Trading*, 163 F.3d at 36 (stating that trademark infringement and trademark dilution claims require a showing that the defendant used the mark in commerce); *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2nd Cir. 2005) (same); *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th Cir. 1996) (same); *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936-37 (8th Cir. 2003) (same). The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. The Act also provides that "a mark shall be deemed to be in *use in commerce* . . . on services when it is *used or displayed in the sale or*

---

[4] For example, "the use of DuPont shoes, Buick aspirin, and Kodak pianos" would be actionable under Section 43(c). *I.P. Lund Trading*, 163 F.3d at 45 (quoting 141 Cong. Rec. S19306, S19310 (daily ed. Dec. 29, 1995) (statement of Sen. Hatch)); *see also* 4 MCCARTHY at § 24:69 ("Dilution by blurring consists of a single mark identified by consumers with two different sources," such as using TIFFANY as a name for a restaurant in Boston instead of the jewelry store).

*advertising of services* and the services are rendered in commerce . . . ." *Id.* (emphasis added). Thus, any use of a mark in the sale or advertising of services is deemed to be a "use" for purposes of determining liability. *Id.*; *1-800 Contacts*, 414 F.3d at 406-07.

Defendant contends that the Complaint fails to sufficiently allege that Defendant made any unauthorized use of the "Total" trademark in commerce. Docket No. 17 at 8. Plaintiff rejects this argument, asserting that the Complaint does allege that Defendant offered to sell billboard advertising space at the Puerta de Tierra Station, which is enough to show that Defendant used the "Total" trademark in commerce. Docket No. 29 at 37. The Court agrees with Defendant.

The language of the Lease[5] restricts Defendant's use of the billboard by prohibiting advertisements: (1) from gasoline industry competitors; (2) that promote adult entertainment products or establishments, or show obscene material; or (3) that include language that could damage Plaintiff's reputation and good will. Docket No. 10-1 at 6-7. On the other hand, the Lease also states:

> [Plaintiff] gives to [Defendant] *all of the necessary authorizations* for [Defendant] to obtain the necessary rights *to operate* its exterior advertising business inside of the [Puerta de Tierra Station], consisting of the *installation and operation* of a structure or digital Billboard . . . . Furthermore, [Plaintiff] *authorizes* [Defendant] to exercise *any other rights that are necessary to . . . operate and show advertising*

---

[5] Generally, documents outside the Complaint should not be considered at the motion to dismiss stage. *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 47 n.1 (1st Cir. 2009). However, excepted from this rule are "documents central to plaintiffs' claim" and "documents sufficiently referred to in the complaint." *Id.* In this case, Plaintiff's claims are based on Defendant's alleged breach of the Lease, and the validity of Plaintiff's termination thereof. Docket No. 1. Moreover, the Complaint and responsive pleadings make substantial references and direct citations to the text of the Lease, which was attached as an exhibit to the Complaint. Docket Nos. 1-9 and 10-1; Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The Court also notes that if an inconsistency exists between the attached document and the pleaded allegations, the document prevails. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013); *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). Lastly, since Defendant is moving to dismiss pursuant to Rule 12(b)(1), the Court may review the documents attached by the parties. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). Thus, the Court considers the Lease for purposes of the Motion to Dismiss.

       *spots* on a structure or Billboard to show exterior advertisements of
       any size or shape . . . .

Docket No. 10-1 at 1-2 (emphasis added). The Lease contains no language that addresses Defendant's rights or obligations with respect to the "Total" trademark.

Thus, contrary to Plaintiff's interpretation, the terms of the Lease do not support a finding that Defendant was a custodian of the "Total" trademark or brand, in charge of commercially exploiting it, and further obligated to maintain its goodwill and good name. Nowhere in the Lease does Plaintiff assign to Defendant any rights over the "Total" trademark. Neither does it contain any language authorizing or ordering Defendant to use or display the "Total" mark on the billboard. Indeed, the Complaint does not allege that the partially installed billboard ever showed any advertisements at all, or that it displayed the "Total" mark, any other mark, or any kind of language. Plaintiff's allegations that Defendant was a custodian obliged to both exploit and maintain the goodwill of the "Total" trademark are contradicted by the literal terms of the Lease. Thus, the Court rejects them.

Furthermore, Plaintiff's contentions that Defendant unlawfully used the "Total" mark in commerce when it offered advertising space for sale on the billboard at the Puerta de Tierra Station, Docket No. 29 at 37, are similarly unpersuasive. First, said acts conformed to and were authorized pursuant to the literal terms of the Lease. If, as stated in the Complaint, "[u]pon termination of the Contract, Landmarks *ceased to be authorized* to commercially exploit the Total brand in the outdoor advertising business," Docket No. 1 at 24 (emphasis added), then it logically follows that Defendant was indeed authorized to commercially exploit the mark and offer

advertising space prior to the termination of the Lease.[6] Alas, it is for this same reason that Plaintiff entered into the Lease with Defendant in the first place: Plaintiff sought to participate in and expand the "Total" trademark onto the outdoor advertisement billboard market, "seeing how effective, lucrative and desirable [the] outdoor advertising industry can be." Docket No. 1 at 10. Defendant's alleged acts of offering advertisement space would have aided Plaintiff in this endeavor.

Moreover, the alleged acts appear to have occurred while the Lease was still in effect, Docket Nos. 1 at 21-24, and 29 at 37, and, importantly, the Complaint does not charge Defendant with making any such offers after the Lease was terminated. Accordingly, Defendant's supposed use of the "Total" trademark through the offering of advertisement space for sale is irrelevant for the Court's analysis.

Rather, the crux of Plaintiff's theory is that the continued display of the partially installed billboard after termination of the Lease constitutes as use in commerce that violates the Lanham Act. Docket No. 29 at 31. To this end, Plaintiff relies on *PC P.R. LLC v. El Smaili*, 925 F. Supp. 2d 222 (D.P.R. 2013), and *Chevron P.R., LLC v. Martínez-Valentín*, Civil No. 10-1192, 2011 WL 147911 (D.P.R. Jan. 13, 2011), to sustain that, once an agreement that authorizes a party to conduct business from a trademark-bearing gas station has been terminated, a refusal to vacate and the continuous occupation of said premises violates the Lanham Act. *Id.* However, Plaintiff's reliance on these cases is misguided.

---

[6] Drawing all reasonable inferences in favor of Plaintiff, the Court holds without deciding that the Lease was terminated on January 9, 2017. Docket No. 1 at 23.

These cases are distinguishable from the case at hand. Essentially, *PC P.R.* and *Chevron P.R.* involved franchising, leasing, and product supply agreements through which the defendant-lessees were granted the right to: (1) lease and operate gasoline stations owned by the plaintiff-petroleum companies, and (2) buy and resale "Texaco" marked or branded petroleum products and merchandise, the trademarks of which belonged to the plaintiffs. Notably, the agreements in those cases stated that defendants were under the obligation to operate the gas stations using and displaying only the trademarks, names, and color-patterns that identified the plaintiff-petroleum companies' products and services, i.e. the "Texaco" name and trademark with black and red coloring schemes. In both cases, the agreements stated that the plaintiffs would have the right to terminate the leases if the defendant-lessees breached the terms of the contract, such as by failing to pay product suppliers or rents owed. After termination, the defendants would no longer have the right to display any of the plaintiffs' trademarks in the leased gas stations, and would have to promptly cease business operations and surrender possession of the stations.

In both cases, the defendant-lessees breached the terms of the leases by failing to pay petroleum and other product suppliers, as well rents owed. The plaintiffs thus terminated the agreements. However, after termination, the defendants-lessees refused to vacate the leased premises. Instead, the defendants continued to conduct business and sell trademarked products—or pass off products from competitors under the plaintiffs' trademarks—from the gas stations, which continued to fully display the plaintiffs' trademarks.

Understandably, in scenarios such as these, claims for trademark infringement or unfair competition under the Lanham Act would be viable, because the defendants—who once had the authorization and obligation under contract to use and display another's trademarks—were still conducting sales from the trademark-bearing gas stations, even when the plaintiff-lessors had

terminated their agreements. That is, those defendants were using the trademarks in commerce without the consent of the trademark owners.

The instant action is distinguishable from *PC P.R.* and *Chevron P.R.* because, contrary to Plaintiff's interpretation, the Lease does not contain any language through which it could be reasonably inferred that Defendant had an affirmative duty or obligation to make use of, display, or exploit the "Total" trademark. In fact, the Lease contained no assignment of rights over the trademark to Defendant. The mere presence of Defendant's partially installed billboard in the Puerta de Tierra Station, without more, does not constitute a use in commerce of the "Total" mark. Thus, the Court declines to follow *PC P.R.* and *Chevron P.R.*, since they are inapposite.

In all, Plaintiff has not alleged that Defendant reproduced or used a colorable imitation of the "Total" mark in commerce to identify, sell, or advertise its own products or services. Neither has Plaintiff sufficiently pled that Defendant sold, advertised, or made any false or misleading statements in commerce to identify or pass off its own products or services under the "Total" trademark,[7] or to identify or pass off "Total" marked products or services as its own.[8] Plaintiff fails to identify any good or service that Defendant sold or advertised under false pretenses, and thus cannot prevail on its trademark infringement claim. *DaimlerChrysler*, 315 F.3d at 937.

In the same vein, Plaintiff has also failed to sufficiently state a claim for trademark dilution. Although Plaintiff did plead that the "Total" mark is famous, it failed to allege that Defendant used or applied the "Total" mark or a similar mark in commerce to identify any of its own products or

---

[7] This unfair competition scenario, commonly referred to as "passing off," occurs when a company sells or advertises its own goods or services under the pretense that they are the goods or services of another. *See DaimlerChrysler*, 315 F.3d at 937.

[8] Conversely, "reverse passing off" occurs when a company sells or advertises another's goods or services as their own. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003).

services. Accordingly, a claim for trademark dilution is not viable. *See I.P. Lund Trading*, 163 F.3d at

47 ("[E]ven if a mark is famous there is no relief unless that mark has been diluted."); *Louis Vuitton*,

507 F.3d at 264-65.

Defendant's use in commerce of a trademark is a prerequisite to a finding of trademark

infringement or dilution. Without such a showing, the Complaint fails to set forth a plausible

claim under the Lanham Act, which renders unnecessary an assessment of likelihood of confusion.

*See Holiday Inns*, 86 F.3d at 626.

### II.     Plaintiff Has Failed to Raise a Federal Question

"It is a bedrock rule that a party seeking to invoke the jurisdiction of a federal court must

bear the burden of demonstrating the existence of such jurisdiction." *Gordo-González v. United States*,

No. 16-2276, 2017 WL 4366862 at *1 (1st Cir. Oct. 3, 2017) (citing *Murphy v. United States*, 45 F.3d

520, 522 (1st Cir. 1995)). Since Plaintiff has failed to state a plausible claim under the Lanham Act,

this Court is left without subject matter jurisdiction to entertain the instant action. *Muñiz-Rivera*

*v. United States*, 326 F.3d 8, 11 (1st Cir. 2003) ("[A] district court's order of dismissal for lack of

subject matter jurisdiction . . . is appropriate only when the facts alleged in the complaint, taken

as true, do not justify the exercise of subject matter jurisdiction.") (citation omitted). Thus, the

Court dismisses with prejudice Plaintiff's claims under the Lanham Act for failure to state a claim

not justifying the exercise of federal question subject matter jurisdiction.

### III.    The Court Shall Not Exercise Supplemental Jurisdiction

The Court has supplemental jurisdiction to hear state law claims when, and if, the federal

court has original jurisdiction in the action and the claims "form part of the same case or

controversy." 28 U.S.C. § 1367(a); s*ee also Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730

F.3d 67, 72 (1st Cir. 2013) ("State and federal claims are part of the same 'case or controversy' . . . if they derive from a common nucleus of operative fact.") (internal citations omitted). Federal courts, however, should decline to exercise supplemental jurisdiction over a plaintiff's state law claims when all federal claims are dismissed. *See Camelio v. Am. Fed'n.*, 137 F.3d 666, 672 (1st Cir. 1998) (holding that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.").

Since the Court has dismissed all of Plaintiff's federal claims arising from the Lanham Act, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims under Puerto Rico law. Because the parties have not engaged in discovery, they would not be burdened if jurisdiction is not retained. The Court further declines to opine on the enforceability of the alleged forum selection clause in the Lease, the validity and effectiveness of the termination of the Lease, or the viability of Plaintiff's claims arising under Puerto Rico law.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss. Plaintiff's Lanham Act claims are hereby DISMISSED WITH PREJUDICE. The remaining claims are hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Friday, October 27, 2017.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
